## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Your affiant, Louis G. Sackandy, hereby deposes and states as follows:

### AFFIANT'S EXPERIENCE

1.      I am a Special Agent ("SA") of the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") assigned to the ATF Arson and Explosives Task Force, Washington, D.C.  I have been so employed since October 1998.  From October 1991 to October 1998, I was a Special Agent with the Naval Criminal Investigative Service.  I have a Bachelors Degree in Criminal Justice from the University of Edinboro in Pennsylvania.  I have completed the Criminal Investigators training course at the Federal Law Enforcement Training Center in Brunswick, Georgia.

2.      I am authorized to conduct investigations of suspected criminal violations of various federal laws, including the Federal explosives laws at 18 U.S.C. § 842 *et seq.* ATF Special Agents are authorized by statute to apply for and execute arrest and search warrants.

3.      I personally have participated in the investigation of the offenses described in this affidavit and have witnessed many of the facts and circumstances underlying this investigation.  In addition, the statements in this affidavit are based on reliable information provided to me by other law enforcement agents and personnel and cooperating witnesses, as well as official documents and reports reviewed in furtherance of the investigation.

4.      This affidavit is submitted in support of an application for a United States District Court search warrant for a location in the District of Columbia described more fully in Attachment A to this affidavit, and a vehicle that is described more fully in

Attachment B to this affidavit, both of which are hereby incorporated by reference.  The location to be searched is a premise located at 442 Jefferson Street, N.W., Washington, D.C., a location doing business as Performance Hobbies.  The vehicle to be searched is a 2002 Dodge Ram truck, silver in color, bearing North Carolina registration tag PYD 3358.

5.    The items to be seized pursuant to this search warrant are records, documents, computer hardware, computer software, and any and all explosive materials not being stored in accordance with Federal explosive laws, as described more fully in Attachment C to this affidavit, which also is hereby incorporated by reference.

## FACTUAL BASIS

6.    Chapter 40 of Title 18 of the United States Code makes it a criminal offense knowingly to distribute any explosive materials to persons without a license or permit; knowingly to distribute explosive materials to an alien; willfully to manufacture, import, purchase, distribute, or receive explosive materials without making records as required by Federal regulations; or to store any explosives in a manner not in conformity with Federal regulations.   The record-keeping and storage regulations relevant to explosive materials are codified at 27 C.F.R. part 555.  A violation of the permitting and record-keeping requirements is punishable by ten years' imprisonment, a $250,000 fine, or both.   A violation of the storage requirements is punishable by one year's imprisonment, a $100,000 fine, or both.

7.    Under Federal law, Ammonium Perchlorate Composite Propellant ("APCP") is an explosive material.  Any fully-assembled rocket motor containing more than 62.5 grams of APCP is subject to the permitting, storage, and other requirements of

2

the Federal explosives laws codified at 18 U.S.C. chapter 40 and 27 C.F.R. part 555. Any reload kit or propellant module that can be used in the assembly of a rocket motor containing a total of more than 62.5 grams of propellant (even if each individual propellant module contains 62.5 grams of propellant or less) also is subject to the permitting, storage, and other requirements of the Federal explosive laws and regulations.

8.      In addition, Federal regulations require an explosives licensee to maintain acquisition, storage, and distribution records of all explosive materials at the business premise. *See* 27 C.F.R. § 555.121(a)(2). Under Federal law, a "business premise" of an explosives manufacturer, importer, or dealer is the property on which explosive materials are manufactured, imported, stored or distributed. *See* 27 C.F.R. § 555.11. The "business premise" includes the property where the records of a manufacturer, importer, or dealer are kept, if different from the premise where explosive materials are manufactured, imported, stored or distributed. When used with respect to a user of explosive materials, the term encompasses the property on which the explosive materials are received or stored and the property where the records of the users are kept, if different from the premise where explosive materials are received or stored.

9.      All the facts and circumstances set forth in this affidavit relate to possible criminal violations of various Federal explosives laws, including permitting, record-keeping, and storage requirements, as set forth in 18 U.S.C. §§ 842(b), 842(d), 842(f), and 842(j).

10.      ATF Industry Operations, a component of ATF, regulates the firearms and explosives industry. On or about February 13, 2006, the ATF Falls Church, Virginia III Industry Operations Field Office received a special request from the ATF Baltimore,

Maryland Industry Operations Field Office in reference to the business premise known as Performance Hobbies, to investigate acquisition and distribution records to determine whether the licensee doing business at Performance Hobbies, KENNESSON RAY ALLEN, was maintaining the records required by Federal law.

11.    According to its website (www.performancehobbies.com), Performance Hobbies is a full service hobby shop that deals in a full line of rocket reload kits, high power rocket motors, hardware, and accessories.   The website also indicates that "Performance Hobbies will be" at a number of rocket launches throughout the country during calendar year 2006.   High power rocket motors, which can be purchased in various sizes, contain the propellant APCP, which is Federally regulated as an explosive material.   Performance Hobbies is located at 442 Jefferson Street, N.W., Washington, D.C., and is owned and operated by ALLEN.   ALLEN maintains a type 24 (importer of low explosives) license that allows ALLEN to receive and distribute low explosive materials, such as APCP, in accordance with Federal regulations.

12.    On March 14, 2006, ATF Industry Operations Investigators ("IOI") Jennifer Scott and Patrick Hoover conducted an investigative inspection of the business premise of Performance Hobbies ("the business premise").   IOI Scott and IOI Hoover initially met with ALLEN at the business premise.   IOI Scott requested the required acquisition and distribution records from ALLEN.   ALLEN informed IOI Scott and IOI Hoover that he did not have the required records at the business premise, because his acquisition and disposition record book was in his truck when it was stolen on February 1, 2006, and when the truck was recovered on February 2, 2006, the acquisition and disposition record book was missing.   ALLEN did produce one box of distribution

receipts from his truck, but in contravention of the applicable laws and regulations, ALLEN refused to allow IOI Scott and IOI Hoover to enter the business premise to inspect any records kept there.

13.     During the course of the investigative inspection, ALLEN told IOI Scott that he had received Federally regulated high power rocket motors via Federal Express ("FedEx") at the business premise.  Because APCP has been classified as an explosive material, Federal regulations require that it be stored in at least a type 4 explosives magazine, that is, a building, igloo or "Army-type" structure, tunnel, dugout, box, trailer, or a semi-trailer or other mobile magazine.  *See* 27 C.F.R. § 555.210.  Furthermore, because of the physical location of the business premise in a residential neighborhood, ALLEN must use a type 4 indoor explosives magazine as specified in 27 C.F.R. § 555.210(b)(1).  ALLEN told IOI Scott and IOI Hoover that he has not had a type 4 indoor magazine at the business premise since June 2005.  According to ATF records, ALLEN has maintained a type 4 indoor magazine in a detached garage on the business premise property since December 2001, but ALLEN refused to allow IOI Scott and IOI Hoover to enter the garage to verify that such a magazine was inside.  The garage, which is located in the rear of the business premise, is described as a one story wooden building, white in color, with a grey door, bearing writings, "KDYA MLK AVE."  ALLEN also refused to allow IOI Scott and IOI Hoover to enter the business premise to determine whether any explosives were being illegally stored there.

14.     ALLEN did allow IOI Scott and IOI Hoover to inspect a type 3 day box that was stored in the enclosed bed of his personal vehicle, which is described as a Dodge Ram truck, silver in color, bearing North Carolina registration tag PYD 3358.  Under

Federal regulations, a type 3 day box may be used to transport explosive materials or to store explosive materials, while attended, for a brief time until the explosive materials can be transferred to the required magazine.  In ALLEN's day box, IOI Scott discovered eight (8) propellant modules, totaling in excess of 62.5 grams of APCP, in violation of Federal regulations.  ALLEN told IOI Scott that the eight (8) propellant modules had been stored in his day box for four (4) months.

15.    On March 16, 2006, ALLEN met with IOI Hoover at the Falls Church, Virginia III Industry Operations Office and provided IOI Hoover with a portion of the records required by Federal regulations.  ALLEN brought a laptop computer to the office that ALLEN identified as a computer that he uses for his business.  From his Yahoo! Inc. e-mail account, ALLEN downloaded ten (10) invoices (acquisition records) dating from about December 2005 to March 2006 and gave them to IOI Hoover.  ALLEN told IOI Hoover that he has been receiving invoices via e-mail, into a Yahoo! Inc. account, from five (5) distributors since 1995.

16.    The ten (10) invoices that ALLEN provided to IOI Hoover reflected transactions with a Federal explosives distributor, RCS Rocket Motor Components, Inc. Some of the invoices contained FedEx tracking numbers.  After investigating these tracking numbers, IOI Scott learned that FedEx received one package for ALLEN containing invoice numbers 31948-2 and 31949-2 at its Beltsville, Maryland facility on March 16, 2006.  Invoice number 31949-2 contained four (4) Federally regulated rocket motors.  FedEx attempted delivery of the package on March 17, 20, and 21, 2006. ALLEN signed for and accepted delivery of the package on March 28, 2006, even though IOI Scott and IOI Hoover had notified ALLEN during the March 14, 2006, investigative

inspection that he could no longer store explosive materials because he did not have a proper storage magazine. ALLEN previously had informed IOI Scott and IOI Hoover that he normally places an order of explosive materials from his distributor each week, usually on Monday or Tuesday.

17.    On March 16, 2006, ALLEN also provided IOI Hoover with transaction receipts dating from about January 2005 to about March 2006. ALLEN is using these transaction receipts to represent required ATF distribution records. A review of the receipts revealed that ALLEN engaged in approximately 129 transactions to 86 different purchasers that involved high power rocket motors in excess of 62.5 grams of the propellant APCP.

18.    Under Federal law, a licensee, such as ALLEN, must verify prior to or with the first order of Federally regulated explosive materials that the customer has a permit or license evidencing legal authority to receive explosive materials. A copy of the purchaser's permit or license must be kept on file for review by ATF Industry Operations. The business receipts obtained by IOI Scott and IOI Hoover reflected approximately 129 transactions to 86 different purchasers in which ALLEN failed to verify and obtain the required customer permits. IOI Scott subsequently determined that of those 129 transactions, 62 transactions were made to 52 different persons without the required permits or licenses and six (6) transactions were made to five (5) different Canadian nationals. ALLEN admitted to IOI Scott and IOI Hoover that he never checked whether his customers legally could receive explosive materials.

19.    Based upon the foregoing, I have probable cause to believe that ALLEN has committed criminal offenses and that property that (1) constitutes evidence of the

commission of a criminal offense and (2) is designed or intended for use, or which has been used, as the means of committing a criminal offense, is located at the location described more fully in Attachment A and the vehicle described more fully in Attachment B.

20.    Specifically, I have probable cause to believe that ALLEN violated 18 U.S.C. §§ 842(b) and 842(d) by knowingly distributing explosive materials to persons who are not licensees or permittees and to aliens.  Receipts that ALLEN provided to IOI Hoover indicated that ALLEN had distributed explosive materials to 52 persons (in a total of 62 transactions) who were not licensed or permitted to receive explosive materials, and to five (5) persons (in a total of six (6) transactions) who were Canadian nationals.  ALLEN admitted that he never checked to see whether his customers legally could receive explosive materials.  I also have probable cause to believe that evidence of this crime can be found at the business premise described more fully in Attachment A or the vehicle described more fully in Attachment B.  Based on my training and experience, I know that explosives licensees generally keep both paper and electronic records related to their business at the business premise, and I believe that additional records identifying the persons to whom ALLEN sold explosive materials, and indicating whether they possessed the licenses or permits required for lawful receipt of such materials, may be found at the business premise.  Because ALLEN also uses his personally owned vehicle for business purposes, such as storing explosive materials and records related thereto, there is probable cause to believe that records related to his business may be found in that vehicle.

21.    I have probable cause to believe that ALLEN violated 18 U.S.C. § 842(f) by failing to maintain required acquisition, storage, and distribution records.  Under the applicable Federal regulations, such records, whether they are in written form, in the form of computer data, or in any other form, must be maintained at the business premise for five (5) years from the date a transaction occurs.  *See* 27 C.F.R § 555.121 (a)(2).  ALLEN failed to produce any records at the business premise.  In addition, the acquisition and distribution records he provided to IOI Hoover covered only the period from approximately January 2005 to March 2006, well short of the five years required under Federal law.  I also have probable cause to believe that evidence of this crime may be found at the business premise described more fully in Attachment A or the vehicle described more fully in Attachment B.   Because Federal regulations require that acquisition, storage, and distribution records be maintained at the business premise for five years following a transaction, the absence of such records at the business premise would be evidence of a criminal offense.

22.    I have probable cause to believe that ALLEN has violated 18 U.S.C. § 842(j) by failing to store explosive materials in conformity with Federal regulations.  ALLEN received shipments of Federally regulated explosives at the business premise, even though he lacked the magazine required for legal storage of those explosives, and kept explosive materials in a day box in his truck for several months, in violation of Federal regulations.  In addition, on March 28, 2006, ALLEN took receipt of a shipment of explosive materials after he had been warned by IOI Scott and IOI Hoover that he did not have the required storage magazine.  I also have probable cause to believe that evidence of this crime may be found at the business premise described more fully in

Attachment A or the vehicle described more fully in Attachment B. As set forth above, ALLEN received a shipment of explosive materials at the business premise approximately one month ago, even though he lacked the proper storage magazine. ATF has no indication that ALLEN has disposed of these explosive materials. In addition, ALLEN admitted to IOI Scott and IOI Hoover during their investigative inspection that he had kept multiple propellant modules containing explosive materials in his day box in his truck for four (4) months, which suggests that he keeps explosive materials on the business premise or in his personally owned vehicle for a significant period of time, and that he may still be in possession of the explosive materials he received in March.

### **COMPUTER-RELATED ISSUES**

23.     As stated above, I believe that computer(s) maintained by ALLEN could contain evidence of criminal activity including but not limited to, e-mail messages, inventory records, customer sales records, acquisition and disposition records, and the like.

24.     I know that computer hardware, computer software, computer-related documentation, passwords and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Federal Rule of Criminal Procedure 41 permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about a crime.

25.  I have reason to believe that ALLEN has utilized computer programs in conjunction with computer hardware to maintain records that played an integral role in the commission of the offenses documented in this affidavit.  Therefore, the above mentioned computer hardware, software, computer documentation, passwords and data security devices constitute means of committing criminal offenses, and are thus instrumentalities (as well as evidence) of the violations recited herein.  These materials are therefore subject to seizure pursuant to Federal Rule of Criminal Procedure 41, and may be retained as evidence and as instrumentalities used in the commission of a crime for a reasonable period of time and may be examined, analyzed, and tested as evidence and instrumentalities used in the commission of a crime for a reasonable period of time.

26.  Based upon my knowledge, training and experience, and consultations with the ATF Computer Forensic Branch, I know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.  This is true because of the following:

a.  *The volume of evidence*.  Computer storage devices (such as hard disks, diskettes, tapes, laser disks, Bernoulli drives, etc.) can store the equivalent of thousands of pages of information.  Additionally, a user may seek to conceal criminal evidence by storing it in random order with deceptive file names. Searching authorities thus must examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis "on-site."

b. *Technical requirements.* Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus it is difficult to know prior to the search which expert possesses sufficient specialized skills to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

27. In light of these concerns, I request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described, if upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the computer hardware on-site for this evidence.

28. Searching ALLEN's computer system for the evidence described more fully in Attachment C may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may

be commingled with criminal evidence.  For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant.  Similarly, agents may be able to locate the materials covered in the warrant by looking for particular directory or file names.  In other cases, however, such techniques may not yield the evidence described in the warrant.  Criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information.  These steps may require agents to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant.  In light of these difficulties, I request permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described more fully in Attachment C.

29.    Although it is not expected that the search will likely result in the seizure of any drafts of publications (such as books, newsletters, web site postings, etc.) that are unrelated to the search and may be protected by the Privacy Protection Act, 42 U.S.C. § 2000aa, reasonable steps will be taken to ensure that no such material is seized. Specifically, ALLEN will be asked to identify whether or not he reasonably believes that any such documents exist on the computer.  If such documents are identified, then an electronic copy of that document may be secured separately from the electronic or hard copies of other documents seized, to permit later appropriate review of that material.

30.    Similarly, it is not expected that the search will likely involve the seizure or review of material that may be confidential pursuant to the attorney-client privilege or

similar recognized privilege. Still, reasonable steps will be taken to ensure that no such material is seized. Specifically, ALLEN will be asked to identify whether or not he reasonably believes that any such documents exist on the computer. If such documents are identified, then an electronic copy of those documents may be secured separately from the electronic or hard copies of other documents seized, to permit later appropriate review of those materials.

## **SUMMARY**

31.    For the reasons stated above, I submit there is sufficient probable cause to believe that KENNESSON RAY ALLEN has violated 18 U.S.C. §§ 842(b) (distribution of explosive materials to non-licensees or non-permittees), 842(d) (distribution of explosive materials to alien); 842(f) (failure to maintain required records regarding explosive materials); and 842(j) (failure to comply with storage requirements for explosive materials). Furthermore, I have probable cause to believe that evidence, fruits, and instrumentalities of those crimes, as further described more fully in Attachment C, are located at 442 Jefferson Street, N.W., Washington, D.C., and in a 2002 Dodge Ram truck, silver in color, bearing North Carolina registration tag PYD 3358. Therefore, I request that a search warrant be issued.

_____
Louis G. Sackandy, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Subscribed and sworn to before me this _____th day of May, 2006.


_____
United States Magistrate Judge